# In the United States Court of Federal Claims

No. 23-759
(Filed Under Seal: May 5, 2024)
Reissued: May 22, 2024[1]

|  |  |
|---|---|
| ANDERS CONSTRUCTION, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant, | ) ) ) |

*Jonathan S. Forester*, Riess LeMieux, LLC, New Orleans, LA, for plaintiff.

*Brendan D. Jordan*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

*SMITH*, **Senior Judge**

      This case is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record and on defendant the United States of America's Partial Motion to Dismiss. Plaintiff Anders Construction, Inc. ("Anders") challenges the United States Army Corps of Engineers' ("USACE") Solicitation No. W912P8-21-R-0042 (the "Solicitation"), which seeks professional diving services in Louisiana. *See generally* Complaint, ECF No. 1 [hereinafter Compl.]; *see* Administrative Record 7, ECF Nos. 19–21 [hereinafter AR]. Specifically, plaintiff challenges the pre-award "corrective action" by USACE, issued in Solicitation Amendment 7 ("Amendment 7"), that required all offerors, regardless of previous agency determinations, to resubmit their respective proposals for reevaluation based on amended metrics. *See generally* Compl.; *see also generally* Plaintiff's Motion for Judgment on the Administrative Record at 1, ECF No. 22 [hereinafter Pl.'s MJAR].

      To Anders, this case is a product of administrative bait-and-switch. Its original proposal was deemed technically compliant; but after it was required to resubmit its proposal under Amendment 7, USACE reevaluation reversed this determination, finding the resubmitted

---

[1]     An unredacted version of this opinion was issued under seal on May 5, 2024. The parties were given an opportunity to propose redactions, and none were requested.

1

proposal as technically noncompliant.  *See* Pl.'s MJAR at 2–4.  This reversal, according to Anders, resulted in three categories of Federal Acquisition Regulation ("FAR") violations; each category lacking a rational basis for their respective regulatory departure.  *See id.*; Plaintiff's Response to Defendant's Partial Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record and Reply in Support of Plaintiff's Motion for Judgment on the Administrative Record at 6, ECF No. 26 [hereinafter Pl.'s Reply].

First, Anders argues that USACE's reversal of Anders' proposal evaluation from technically acceptable to unacceptable lacks a rational basis because:

1) Anders' proposal complied with the Solicitation's "Record Keeping" requirements;

2) Anders' proposal complied with the Solicitation's "lost divers plan" requirements;

3) Anders' proposal complied with the Solicitation's "sample repetitive dive worksheet" requirements;

4) Anders' proposal complied with the Solicitation's "administrative and record-keeping" requirements; and

5) Anders' proposal complied with the Solicitation's employee—specifically, Mr. Jeffrey Sikut's—documentation requirements.

*See* Pl.'s Reply at 9–15.  Second, Anders alleges that USACE's corrective action violated the FAR by providing no description of Amendment 7's Solicitation revisions.  *Id.* at 17.  Third, Anders contends that USACE violated the FAR when its refused Anders' request for an independent review of USACE's correction actions.  *Id.*  For all three reasons, independently and collectively, Anders requests permanent injunctive relief requiring defendant to award plaintiff the contract pursuant to defendant's Solicitation.  *See* Compl. at 34–35.  Alternatively, Anders requests that the Court—in order to reinstate "fair competition" back into the bidding war— "should declare and require [USACE] to mandate payment of prevailing wages" to Anders' divers when traveling to and from USACE's site.  *See* Oral Argument at 5:8–18, ECF No. 30 [hereinafter Oral Arg.].

Defendant counters that USACE's reversal of Anders' proposal for lack of technical acceptability was rational, and that USACE's corrective action was also rational and enhanced the competitive process.  *See* Defendant's Partial Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record and Opposition to Plaintiff's Motion for Judgment on the Administrative Record at 17–27, ECF No. 24 [hereinafter Def.'s CMJAR.].  Accordingly, defendant argues that a permanent injunction is unwarranted because Anders fails on the merits and, in the alternative, because Anders was neither prejudicially harmed nor do the balance of public interest and government hardship weigh in Anders' favor.  *Id.* at 27–32.  Similarly, defendant seeks dismissal of Anders' alternative claim—that the Court order USACE to

2

"mandate payment of prevailing wages"—because the Court lacks jurisdiction over Declaratory Judgment Act claims. *Id.* at 14–17.

For the below reasons, Anders' Motion for Judgment on the Administrative Record is granted in part and denied in part and defendant's Cross-Motion for Judgment on the Administrative Record is denied. Also, defendant's Partial Motion to Dismiss—which pertains only to Anders' alternative declaratory claim—is granted.

## I.    Background

### A.    USACE's Solicitation

On July 30, 2021, USACE issued the Solicitation for professional diving services. AR 31. The Solicitation's performance period was one twelve-month base period, and four twelve-month option periods, with a total capacity of five years of service or $5,000,000, whichever occurred first. AR 32.

USACE evaluated every proposal using three evaluation factors: the offeror's Past Performance; the offeror's Technical Evaluation, composing of both the offeror's Personnel Qualifications and Experience and Management Plan; and the offeror's Price. AR 84–85. The Technical Evaluation Factor—crucial for the present dispute—required offerors to submit a Management Plan that would include the following: mobilization location; an expedited mobilization plan; an after-hours mobilization plan; a dive operations plan; an activity hazard analysis; an emergency management plan; a record of exposure and accident experience; a safe practices manual; and a statement confirming that the offeror possesses all normal and special diving equipment necessary. AR 81–83. Specifically, USACE required that the safe practices manual comply with its Safe and Health Requirements Engineer Manual Section 30.A.015, items a-k, of EM 385-1-1. AR 63, 82. USACE informed offerors that this information "**MUST be submitted in the offeror's proposal in order to be considered for award**," and that it would evaluate this Factor on a Pass or Fail basis. AR 81 (emphasis in original), 86; *see also* Def.'s CMJAR at 4.

Between the Solicitation's issuance and this protest, USACE amended the Solicitation fourteen times, mostly to respond to offerors' concerns and questions. AR 178, 195–240, 2250, 2258–2400, 2410, 4118, 4172, 4196, 4198, 4202, 4539, 4541, 4593. Specifically, Amendments 1 through 4 detailed information about solicited diving services obligations and requirements, including addressing questions from potential offerors about that information. AR 178, 195–236. Amendments 5 and 6 extended the initial proposal deadline due to inclement weather. AR 237–240. After initial proposals were received, Amendment 7 was released, which replaced the initial solicitation and all six previous amendments with a revised solicitation. AR 2258–2400. Amendments 8 through 12 extended the deadline for resubmitted proposals based on Amendment 7's terms, as well as correcting some typographic errors. AR 2410, 4118, 4172, 4196, 4198, 4539, 4541, 4593. Amendment 13 suspended proposal revelations due to a pre-

award protest. AR 4196. Finally, Amendment 14 added information on divers' wage concerns and continued the suspension of deadlines originally imposed by Amendment 13. AR 4202. Of the fourteen amendments, only Amendments 7, 8, 10, and 14 are at issue.

### B.    USACE's Three Offerors

Around September 8, 2021, USACE received three offerors' initial proposals in response to the Solicitation: Anders; Lotus USA, Inc. ("Lotus"); and Specialty Diving of Louisiana, Inc. ("Specialty"). AR 1693–97. The Source Selection Evaluation Board (the "Board") evaluated each offeror's proposal for technical acceptability—but found only Anders' proposal to be technically acceptable. AR 1694–95. In contrast, both Lotus and Specialty failed this evaluation—particularly Lotus, whose proposal was "severally deficient and fail[ing] nearly all the technical acceptability criteria." *See* Def.'s CMJAR at 5 (citing AR 1695–97). On December 2, 2021, USACE's Contracting Officer adopted these findings and eliminated both Lotus and Specialty from the competition. AR 1716, 1718, 1720.

While Anders' initial proposal met all required criteria, USACE disapproved of Anders' price, and decided, after seeking to clarify the contract price with Anders, to communicate with all three offerors regarding potential remedial efforts. AR 87, 2080–2102, 2203–04, 2249–51. On December 6, 2021, Specialty requested a debriefing under FAR section 15.505, seeking information on its technical noncompliance ruling. AR 1740. On December 13, 2021, USACE again informed Specificity that its proposal was technically deficient. On January 11, 2022, Specialty informed USACE that it would protest the decision unless USACE reevaluated its proposal for technical compliance. AR 1747, 1792–94. USACE ordered reevaluation of all three offerors' proposals; and after the offerors resubmitted the proposals, on February 4, 2022, the Board issued its reevaluations. AR 2072–79. Based on the Board's review, USACE's Contracting Officer made the following determinations: Lotus' proposal still failed, *see* AR 2091–93; Specialty's proposal was still technically deficient, *see* AR 2102–03; and Anders' proposal was now technically deficient, *see* AR 2080–82. Specifically, USACE concluded that Anders failed to comply with the Solicitation's (1) "Record Keeping" requirements; (2) "lost divers plan" requirements; (3) "sample repetitive dive worksheet" requirements; (4) "administrative and record-keeping" requirements; and (5) employee documentation requirements as to one employee, Mr. Jeffrey Sikut. AR 2081–82. Because of these errors, each offeror was allowed to amend and resubmit their respective proposals to USACE by March 9, 2022. AR 2080–2102.

### C.    Anders Protests USACE's Reevaluation

On March 3, 2022, Anders sent a letter to USACE that its proposal was not deficient and, being the only technically acceptable proposal, Anders should be awarded the contract. AR 2114–15. That same day, Anders filed an agency-level protest, arguing that USACE incorrectly determined that its proposal was technically deficient. AR 2118–20. On March 9, 2022, Anders supplemented this protest with further support that its proposal is technical acceptable. AR 2151.

4

On April 19, 2022, in response to Anders' communications and protest, USACE issued Amendment 7 of the Solicitation, wherein USACE addressed issues with safe practices manual requirements and the proposal submission schedule, as well as included language regarding payments and overtime. AR 2258–2400. On April 27, 2022, USACE issued Amendment 8 to add clarity to the overtime payment system. AR 2410.

On April 25, 2022, Anders sent another letter to USACE stating that USACE's corrective action did not address Anders' concerns. AR 2404–06. Consequently, Anders filed a protest at the Government Accountability Office ("GAO"), alleging that USACE had manufactured deficiencies after finding Anders' initial proposal technically acceptable to justify taking corrective action that allowed all three parties to resubmit their respective proposals. AR 2411. Anders also alleged that USACE should have granted Anders' request for an independent review of USACE's determinations pursuant to FAR 33.103. AR 2414. Based on these reasons, Anders requested that it be awarded the Solicitation's resulting contract or, alternatively, receive an independent review under FAR 33.103. *Id.* USACE opposed. AR 3870–71. On May 2, 2022, USACE suspended the revised proposal deadline pending the result of the GAO protest. AR 3868.

On July 20, 2022, the GAO dismissed Anders' protest, concluding that USACE had broad discretion to take corrective action under the circumstances and that the agency did not act in bad faith. AR 4116.

### D.   Anders' Second GAO Protest

On August 26, 2022, after Anders' first GAO protest was dismissed and USACE issued Amendment 10 of the Solicitation, Anders brought another agency protest to challenge the wage determination language in Amendment 10. AR 4118, 4189. In this protest, Anders argued that Amendment 10's requirement that "[p]revailing wage rates do not apply to mobilization and demobilization" violated federal law by preventing Anders from paying divers during their commute to dive sites. AR 4191–94. On September 16, 2022, after issuing many amendments to proposal submission deadlines, USACE issued Amendment 14, which sought to address Anders' Amendment 10 concerns by removing language that prevented payment to divers prior to their arriving at dive sites. AR 4198, 4202.

On October 10, 2022, Anders filed a second GAO protest that challenged USACE's corrective action reflected in Amendments 7, 8, 10, and 14 on the grounds that USACE did not clarify employment costs under the Solicitation nor comport with United States Department of Labor wage regulation. AR 4205–13. On January 17, 2023, the GAO dismissed Anders' second protest because USACE was not required to provide diver wage guidance and the responsibility rested solely with the Department of Labor. AR 4618.

5

### E. Procedural History

On May 23, 2023, Anders filed its Complaint with this Court alleging that USACE committed the following FAR violations: (i) USACE's reversal of its technical acceptability rating for Anders' proposal lacks a rational basis; (ii) USACE's corrective action failed to provide a description of Amendment 7's Solicitation revisions; and (iii) USACE failed to provide an independent review of Anders' proposal.  *See* Compl. at 6–33.  Because of these errors, Anders seeks permanent injunctive relief.  *Id.* at 34–35.  Alternatively, the Court—in order to reinstate "fair competition" back into the bidding war—"should declare and require [USACE] to mandate payment of prevailing wages" to Anders' divers when traveling to and from USACE's site.  *See* Oral Arg. At 5:8–18; *see also* Compl. at 30–33.

On June 26, 2023, defendant filed the initial Administrative Record.  *See generally* Initial Administrative Record, ECF Nos. 8–10.  On July 24, 2023, defendant filed the corrected Administrative Record.  *See generally* AR.  That same day, Anders filed its Motion for Judgment on the Administrative Record.  *See generally* Pl.'s MJAR.  On August 14, 2023, defendant filed its Response to Anders' Motion for Judgment on the Administrative Record and its Cross-Motion for Judgment on the Administrative Record and its Partial Motion to Dismiss.  *See generally* Def.'s CMJAR.  On August 24, 2023, Anders filed its Response to the Cross-Motion and Motion to Dismiss, as well as its Reply in support of its Motion for Judgment on the Administrative Record.  *See generally* Pl.'s Reply.  On September 5, 2023, defendant filed its Reply in support of its Motion on the Administrative Record.  *See generally* Defendant's Reply in Response to Motion for Judgment on the Administrative Record, ECF No. 27 [hereinafter Def.'s Reply].  On November 11, 2023, the Court held Oral Argument.  *See generally* Oral Arg.  During Oral Argument, the Court both encouraged settlement and ordered the parties to reappear before the Court in early December to discuss whether settlement had been reached.  *Id.*  On December 6, 2023, the Court held a status conference on potential settlement, where the parties informed the Court settlement was not possible and the parties finished argument before the Court.  *See generally* Status Conference, ECF No. 31.  With the respective motions fully briefed and argued, the Court now issues its decision.

## II. Standard of Review

### A. Motion for Judgment on the Administrative Record in Bid Protests

The Court's jurisdictional touchstone is the Tucker Act, which grants jurisdiction over bid protest actions.  *See* 28 U.S.C. § 1491(b).  The Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard for agency actions.  *See* 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706(2)(A)); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) ("*Impresa*")).  The APA only allows agency actions to be set aside if the agency decisions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706 (incorporated in 28 U.S.C. § 1491(b)(4)).

For bid protests, this Court can only grant relief when "either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332–33 (citing *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)).  Any protester, like Anders, "'bears a *heavy burden* of showing that the award decision has no rational basis.'"  *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa*, 238 F.3d at 1332–33) (emphasis added).  Specifically, if "'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,'" then the agency's basis for its decision was rational. *Id.* (quoting *Impresa*, 238 F.3d at 1332–33); *e.g.*, *DGS Contract Serv., Inc. v. United States*, 43 Fed. Cl. 227, 238 (1999) (finding that agencies are given "broad discretion to take corrective action" if a coherent and reasonable explanation is provided).  Likewise, when a challenge alleges a violation of a procurement regulation or procedure, the protester must show that the alleged violation was "clear and prejudicial."  *See Impresa*, 238 F.3d at 1333 (citing *Kentron Hawaii, Ltd.*, 480 F.2d at 1169).

But a heavy burden is not insurmountable; an agency's decision will be overturned when an agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "In conducting this inquiry, the [C]ourt will look to see whether the agency has 'examin[ed] the relevant data and articulat[ed] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  *Cybertech Group, Inc. v. United States*, 48 Fed. Cl. 638, 646 (2001) (quoting *Rainbow Navigation, Inc. v. Dep't of Navy*, 783 F.2d 1072, 1080 (D.C. Cir. 1986)) (internal quotation marks omitted).  Any evidence used in this inquiry is limited to the administrative record, with the Court determining whether the motioning party has met its heavy factual burden.  *See* R. Ct. Fed. Cl. 52.1; *Bannum*, 404 F.3d at 1354.

### B. Rule 12(b)(1) of the Rules of the Court of Federal Claims

Rule 12(b)(1) of the Rules of the Court of Federal Claims requires dismissal of a claim when subject-matter jurisdiction is absent.  To determine whether jurisdiction is proper, the Court refers to the Tucker Act, *see* 28 U.S.C. § 1491, wherein sovereign immunity is waived, thereby permitting claims against the United States, *see United States v. Mitchell*, 445 U.S. 535, 538 (1980).  The Court lacks jurisdiction to review claims and grant general declaratory relief originating from the Declaratory Judgment Act.  *See United States v. King*, 395 U.S. 1, 5 (1969); *e.g.*, *Medrano v. United States*, 159 Fed. Cl. 537, 551 (2022) (dismissing a Declaratory Judgment Act claim seeking a declaration to compensate alleged pre- and post-shift contractor actions).

**III.     Discussion**

Straightforwardly communicated requirements aid both state and private actors in fulfilling their regulatory obligations. In contrast, murky commutation invites disputes—for arbitrary and unreasonable government actions fester in opaqueness—and, unfortunately, this Court finds the parties in these muddied waters. Consequently, the Court must find clarity in the regulatory miscommunication by deciding two interdependent issues. First, whether USACE acted unreasonably when it deemed Anders' proposal technically unacceptable during reevaluation after originally accepting Anders' proposal during the initial evaluation. Second, if the Court finds that USACE acted unreasonably, the Court must then decide whether to enter a permanent injunction requiring USACE to award Anders the contract.

USACE, for the below reasons, acted unreasonably and, accordingly, a permanent injunction directing USACE to award the contract to Anders is proper. That said, this Court lacks jurisdiction to review claims and award relief under the Declaratory Judgment Act. Thus, dismissal is warranted for Anders' alternative claim concerning whether Anders' divers will be compensated by USACE when traveling to and from dive sites.

**A.     Plaintiff's MJAR is Granted because Defendant's Technical Compliance Analysis Was Arbitrary, and a Permanent Injunction Directing USACE to Award the Contract to Anders is Warranted.**

**1.     USACE's Technical Compliance Reversal was Arbitrary.**

Was USACE's reversal of its evaluation of plaintiff's proposal—from technically acceptable to unacceptable—"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"? *See* 5 U.S.C. § 706 (incorporated in 28 U.S.C. § 1491(b)(4)). It was. Plaintiff is correct that USACE's reversal, based on five interrelated factors, lacks a rational basis and was thus arbitrary. *See* Pl.'s MJAR at 13–19; Pl.'s Reply at 9–15. Anders, despite USACE's protestations overwise, did (1) comply with the Solicitation's "Record Keeping" requirements; did (2) comply with the Solicitation's "lost divers plan" requirements; did (3) comply with the Solicitation's "sample repetitive dive worksheet" requirements; did (4) comply with the Solicitation's "administrative and record-keeping" requirements; and did (5) comply with the Solicitation's employee—specifically, Mr. Jeffrey Sikut's—documentation requirements. AR 2081–82. Therefore, plaintiff's MJAR is successful for the five reasons below.[2]

**Solicitation Requirement One: "Record Keeping."** Defendant's contention that a "sample" completion report is necessary to fulfil the record keeping requirements, *see* Def.'s CMJAR at 18–20, belies the terms of the Solicitation which require the following:

---

[2]     Given the Court finds the above USACE's actions are without a rational basis, a finding enough to nullify the agency's decision, the Court need not address Anders' remaining two arguments; that is, USACE's corrective action violated the FAR by providing no description of Amendment 7's Solicitation revisions; and USACE failed to provide an independent review of its corrective actions as required by the FAR. *See* Pl.'s Reply at 17. The Court's demure should not be construed as to the viability of such arguments, however.

> • <u>Completion Report</u>: The specifications require a completion report, as stated in the PWS paragraph 14 "Record Keeping", which identifies the results and findings of a dive. The offeror must submit a sample completion report from a dive under a previous contract. Note that this is not the post dive survey which rates the Contractor's job performance.

AR 83. Notice the completion report's contents are cabined by the needs of paragraph 14's language, meaning the report *is*—neither more nor less—the following:

> 14. <u>Record Keeping</u>
>
> A record of all dives must be kept. An electronic copy of all dive logs, time logs, Job Hazard Analyses (JHA) or Job Safety Analyses (JSA) forms, a pre-dive safety meeting form, and a post-dive safety meeting form must be submitted to the COR and the District Dive Coordinator within 24 hours after the completion of each day's dive. The dive logs must be in accordance with Section 30.A.24 of EM-385-1-1. The daily time logs must include the arrival time at the dive site, the completion time of the dive, the time at which the dive team is leaving the dive site, the time that the pre and post dive safety meetings occurred, and on the bottom of each time log it shall be noted as dive complete and no incidents to record. In addition, a completion report shall be prepared following all inspection dives, which includes a description of the condition of all items surveyed or inspected. Clear, readable sketches shall be prepared to supplement the text descriptions. The reports and sketches must be submitted electronically to the COR and District Dive Coordinator within 48 hours after the completion of the dive. All documents, reports, and sketches must be submitted electronically and be clearly legible.

AR 64. Neither party disputes that Anders' proposal, in the section entitled "Completion Report," includes all the components—dive logs, time logs, Job Hazard Analyses, Job Safety Analyses, pre-dive safety meeting, post-dive safety meeting, and a condition report of all inspected items—required by the above paragraph. AR 1279; *id.* at 1280–94 (the contents of Anders' completion report); *see also* Def.'s CMJAR at 18–20; Pl.'s Reply at 9–10. Yet, defendant insists that, beyond the documentation already provided by Anders, paragraph 14 incorporates an unmentioned requirement for a "sample" completion report. *Compare* Pl.'s Reply at 9–10, *with* Def.'s CMJAR at 18–20.

Although USACE has "broad discretion . . . to evaluat[e] . . . technical proposals," *see Omega World Travel, Inc. v. United States*, 54 Fed. Cl. 570, 578 (2002), "[i]t is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation," *see Elec. Data Sys., LLC v. United States*, 93 Fed. Cl. 416, 430 (2010) (explaining "[t]his requirement is rooted in the Competition in Contracting Act . . . and the . . . FAR . . . , both of which indicate that an agency shall evaluate proposals and assess their qualities solely

based on the factors and subfactors specified in the solicitation."). "It thus is beyond peradventure that the government may not rely upon undisclosed evaluation criteria in evaluating proposals, *Acra, Inc. v. United States*, 44 Fed. Cl. 288, 293 (1999), and, where appropriate, must disclose the factors' relative importance, *Isratex, Inc. v. United States*, 25 Cl. Ct. 223, 230 (1992)." *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 386 (2003) (citations in original), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004). USACE asks the Court to nonetheless uphold its evaluation based upon an undisclosed criterion—that is, the so-called sample completion report. The Court will not impose a criterion belying paragraph 14's dictate.

Paragraph 14 only requires a sample report "be prepared following all inspection dives" and no later than "48 hours after the completion of the dive." *Compare* Def.'s CMJAR at 18–20, *with* AR 64. In other words, a completion report should only be prepared *after* a dive has occurred, not prior to a dive nor at the procurement stage, as Anders correctly points out. *See* AR 64; Pl.'s Reply at 9–10. Therefore, USACE's technical acceptance reversal based on this reason was arbitrarily misapplied to Anders. *See Elec. Data Sys., LLC*, 93 Fed. Cl. at 430 (citing *Banknote Corp. of Am.*, 56 Fed. Cl. at 386). If USACE wanted a sample completion report included in the proposal, a factor it clearly determined (at least post-hoc) important, it should have communicated this need up front. *Id.* Because it did not, the Court finds in Anders' favor.

**Solicitation Requirement Two: "Lost Divers Plan."** The Solicitation requires a "lost divers plan" consisting of certain required documentation. *See* AR 63, 441, 608, 703–06. Those documents are: a lost diver plan for SCUBA operations; a sample of repetitive dive worksheets; and an outline of administrative and record-keeping procedures. *See* AR 2081–82; Def.'s CMJAR at 20. Puzzlingly, USACE rated Anders' proposal noncompliant for failing to provide these documents when Anders did provide them. *See* AR 2157–59. Sure, as Anders admits, these documents are not labeled "lost divers plan." *See* Pl.'s Reply at 11. But that fact is immaterial because neither the Solicitation nor the applicable regulations require standardize labeling, and defendant never cites to any authority to the contrary. *See* Def.'s CMJAR at 20–22; Def.'s Reply at 8–9; *see also* AR 441 (discussing the regulatory obligations of 29 CFR 1910.422(i)). Indeed, caselaw proscribes the opposite: when agencies do not list a requirement, it cannot adjudge a proposal based upon unstated evaluation criteria. *See Elec. Data Sys., LLC*, 93 Fed. Cl. at 430 (stating that "an agency shall evaluate proposals and assess their qualities solely based on the factors and subfactors specified in the solicitation.").

Mere semantic preferences are not reason enough to kick out a proposal when, as here, those preferences were never communicated to prospective offerors. *See id.*; *Banknote Corp. of Am.*, 56 Fed. Cl. at 386; *Acra, Inc.*, 44 Fed. Cl. at 293; *e.g.*, Pl.'s Reply at 11 (". . . Section 30.A.15 [which USACE relies upon] does not require that [the lost divers plan] be identified or labeled in any particular manner[.]"). Rational fairness dictates that agency actions must be based on some regulatory reasoning backing their decisions. *See Impresa*, 238 F.3d at 1335 (rooting rationality of agency decisions in regulatory authority). In contrast, USACE's noncommunication—its gotcha silence—of requirements is never fair; it invites mercurial evaluation, in violation of the APA's prescription against "arbitrary" agency decisions, because the agency not only "*failed to consider relevant information*," *i.e.*, the documents provided by Anders, it also "ignored" informing offerors of what it now considers "an important aspect of the procurement." *See MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 544 (2011) (emphasis

added); *Am. K-9 Detection Servs., LLC v. United States*, 155 Fed. Cl. 248, 311 (2021) (holding an agency's decision "to be arbitrary and capricious for failing to consider all information related to" the proposal); *see also* 5 U.S.C. § 706; *Banknote Corp. of Am.*, 365 F.3d at 1351 (reasoning that agency reinterpretation cannot be without a rational basis). Like with Solicitation Requirement One, if USACE wanted the lost divers plan to be labeled, it should have communicated this need. *See Elec. Data Sys., LLC*, 93 Fed. Cl. at 430; *Banknote Corp. of Am.*, 56 Fed. Cl. at 386; *Acra, Inc.*, 44 Fed. Cl. at 293. To do otherwise, while also ignoring Anders' already supplied documentation, was an arbitrary act. *See MORI Assocs., Inc.*, 102 Fed. Cl. at 544; *Am. K-9 Detection Servs., LLC*, 155 Fed. Cl. at 311. Therefore, Solicitation Requirement Two falls in Anders' favor as well.

**Solicitation Requirement Three: "Sample Repetitive Dive Worksheet."** USACE's analysis of Anders' proposal for compliance with this requirement was irrational for the same reasons explained in Solicitation Requirement Two. *Id.* The Solicitation only required that Anders' proposal include sample repetitive dive worksheets, and Anders included those worksheets under the header "Repetitive Dive Worksheet." *See* AR 955, 958. No more is necessary to be technically compliant; nor does defendant—beyond pointing to the arguments discussed in relation to Solicitation Requirement Two—really contest this fact. *See* Def.'s CMJAR at 21; *see also Elec. Data Sys., LLC*, 93 Fed. Cl. at 430; *Banknote Corp. of Am.*, 56 Fed. Cl. at 386; *Acra, Inc.*, 44 Fed. Cl. at 293. Accordingly, Solicitation Requirement Three falls in Anders' favor too.

**Solicitation Requirement Four: "Administrative and Record-Keeping."** The Solicitation required an outline and record-keeping procedures in line with USACE regulation, *see* AR 63 (outlining USACE regulations under Section 30.A.15, items a-k, of EM 385-1-1); AR 82, 1697; *see also* Pl.'s MJAR at 15–16; Def.'s CMJAR at 21–22, which Anders included in its proposal, *see* AR 1277 (stating, in the proposal, that "[t]he diving supervisor shall upkeep daily logs, activity logs, dive logs, and other required paperwork. All team members must sign in an[d] [sic] verify dives and daily logs.").

Despite Anders including this information in its proposal, USACE claimed: "Ander's [sic] technical proposal should be more comprehensive for their 'outline of administrative and record-keeping procedures.'" AR 2082. Now, did USACE ask for a "comprehensive" outline in its Solicitation? The Board—on both Anders' initial, *see* AR at 1697, and revaluated, *see* AR at 2079, proposals—certainly did not believe so, as it determined that the limited information provided by Anders was sufficient. Of course, the agency is entitled to disagree, *see EFW, Inc. v. United States*, 148 Fed. Cl. 396, 411 (2020), but its decision must be substantiated, *see Impresa*, 238 F.3d at 1332–33. This requirement was not met. Instead, USACE's reversal inserted an "undisclosed evaluation criteri[on]"—the comprehensiveness requirement—without fair warning to Anders to beef-up its proposal in this area; this reversal is thus, as a matter of law, a violation of our system's fair competition regime. *See Banknote Corp. of Am.*, 56 Fed. Cl. at 386; *Elec. Data Sys., LLC*, 93 Fed. Cl. at 430; *Acra, Inc.*, 44 Fed. Cl. at 293. Again, straightforward communication of agency needs, as stated in the Solicitation, controls evaluations of proposals. *See Banknote Corp. of Am.*, 56 Fed. Cl. at 386. If USACE wanted a more comprehensive outline, it should have communicated this need. *Id.* It did not. That failure means this Solicitation Requirement falls in Anders' favor.

**Solicitation Requirement Five: Employee Documentation.**  USACE believes Mr. Sikut required a fitness to dive certificate for two reasons.

First, USACE noted that Mr. Sikut "is listed as a Supervisor/Tender on page 29 [of] 1054, [the page where all prospective Anders employees and applicable roles are listed, but] is not listed as a Superiors on Page 161 [of] 1054," where all the supervisors who will participate in the Expedited Mobilization Plan are listed.  *See* Def.'s Mot at 22 (citing AR 2081–82).  The Expedited Mobilization Plan describes "the process [as] to how it will be assured that the required dive team(s) and equipment will arrive at the specified dive location within five hours of notification"; but including a potential employee, like Mr. Sikut, was a voluntary act, as the Solicitation did not require all persons designated as supervisors be listed therein.  *See* AR 82.  Instead, Anders needed to only include an Expedited Mobilization Plan in its proposal.  *Id.*  Anders did so.  *See* AR 401.  If USACE wanted different information, it once again should have said so.  *See Elec. Data Sys., LLC*, 93 Fed. Cl. at 430; *Banknote Corp. of Am.*, 56 Fed. Cl. at 386; *Acra, Inc.*, 44 Fed. Cl. at 293.

Second, because of the reporting discrepancy and because Anders included Mr. Sikut's diving school transcript, USACE assumed that Mr. Sikut could be both a supervisor of divers and a diver himself.  *See* Def.'s Mot at 23 (citing AR 307).  USACE is wrong.  Plainly, Mr. Sikut is listed as a "Supervisor/ Tender," not a diver.  There is no ambiguity as observed in Anders' proposal:

**Diver List**

| | Name | Designation | Diploma | CPR /FA / O2 | 4 Dive Logs | Dive Logs | Physical | Resume |
|---|---|---|---|---|---|---|---|---|
| 1 | John Anders | Supervisor / Diver / Tender | ADC Card | YES | 1/27/2021 | 4 | 2/18/2022 | YES |
| 2 | Michael Stebbins | Supervisor / Diver / Tender | Diploma | 11/18/2021 | 1/18/2021 | 4 | 12/14/2021 | YES |
| 3 | Brett Holyfield | Supervisor / Diver / Tender | Diploma | 6/17/2022 | 8/24/2021 | 4 | 12/14/2021 | YES |
| 4 | Shawn Brackett | Supervisor / Diver / Tender | Diploma | 6/17/2022 | 1/17/2021 | 4 | 12/14/2021 | YES |
| 5 | Jeffrey Sikut | Supervisor / Tender | Diploma | 3/12/2023 | 6/15/2021 | 4 | na | YES |
| 6 | Michale Petrofsky | Diver / Tender | Diploma | 3/31/2023 | 8/14/2021 | 4 | 1/20/2022 | YES |
| 7 | Clayton Minchew | Diver / Tender | Diploma | 3/18/2022 | 1/20/2021 | 4 | 12/14/2021 | YES |
| 8 | Thomas Harter | Diver / Tender | Diploma | 6/26/2022 | 1/6/2021 | 4 | 7/13/2022 | YES |
| 9 | Jose Toro-Ancan | Diver / Tender | Diploma | 4/8/2022 | 5/18/2021 | 4 | 8/9/2022 | YES |
| 10 | Justin Campbell | Diver / Tender | Diploma | 8/9/2023 | 2/28/2021 | 4 | 7/19/2022 | YES |
| 11 | Walter Bala | Supervisor / Diver / Tender | Diploma | 3/19/2023 | 2/8/2021 | 4 | expired | YES |
| 12 | Alexander Friedt | Tender | Diploma | 8/6/2020 | 12/29/2020 | 4 | na | YES |
| 13 | John Monaco | Tender | Diploma | 8/25/2023 | 8/24/2021 | 4 | na | YES |

Note: Yellow Boxes are Links to their certificates.

*See* AR 269.  As the graphic shows, Mr. Sikut is not listed as a "Diver" unlike, for example, his colleagues John Anders, Micheal Stebbins, Brett Holyfield, and Shawn Brackett.  *See* AR 82.  Rather, Mr. Sikut is only listed as a "Supervisor/Tender."  *Id.*  This unambiguous chart resolves that Anders did not list Mr. Sikut as a diver, and therefore did not need to include a fitness to dive certificate.  AR 82, 269.  Therefore, Solicitation Requirement Five falls in Anders' favor.

*\*\*\**

12

At bottom, "[w]hat we've got here is a failure to communicate." COOL HAND LUKE (Warner Brothers 1967). Understanding this deficiency, USACE only proffered the above reasons after initially evaluating Anders' proposal as technically acceptable. *See* AR 694–95. While USACE "is entitled to rethink [its] old" determinations, *see Commc'n Workers of Am., Loc. 5008 v. N.L.R.B.*, 784 F.2d 847, 849 (7th Cir. 1986), its reinterpretation cannot be without a rational basis, *see Impresa*, 238 F.3d at 1332 ("if . . . the procurement official's decision lacked a rational basis[,]" it can be set aside). None of the above reasons provide such a basis, especially since they amount to a single point. That being, if USACE wanted different information— whether it be labeling or be additional documentation—it should have clearly stated such requirements in the Solicitation. *See Banknote Corp. of America*, 365 F.3d at 1351. Clarity controls our federal government contracts' system. *Id.* And in this case, as a matter of law, USACE went beyond the bounds of its discretion when it reversed the proposal's technical compliance determination. *See Impresa*, 238 F.3d at 1332; *e.g.*, *Elec. Data Sys., LLC*, 93 Fed. Cl. at 430 (describing that a proposal's rejection based on factors not within the agency's solicitation is not rational); *Banknote Corp. of Am.*, 56 Fed. Cl. at 386 (same); *Acra, Inc.*, 44 Fed. Cl. at 293 (same). Nor do any of the above reasons evince accepting the USACE's decision anyways because the "explanation for its decision . . . runs counter to the evidence" presented above. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Accordingly, plaintiff's MJAR is granted as to the technical compliance claim.

### 2. Permanent Injunctive Relief is Granted.

Anders, if it succeeds on the merits, seeks permanent injunctive relief. *See* Compl. at 34–35; Pl's MJAR at 36–39. Defendant opposes. *See* Def.'s CMJAR at 30–33. For the below reasons, plaintiff's permanent injunction is granted.

A permanent injunction is warranted when: plaintiff has succeeded on the merits, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1228 (Fed. Cir. 2004); plaintiff will suffer irreparable harm by USACE's actions if the Court withholds injunctive relief, *see AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 378 (2009); and plaintiff's harm and the public interest outweighs any resulting government inconvenience, *see GEO Group, Inc. v. United States*, 100 Fed. Cl. 223, 229 (2011) (government inconvenience discussed); *Progressive Indus., Inc. v. United States*, 129 Fed. Cl. 457, 486 (2016) (public interests discussed). Anders has succeeded on the merits, so the Court turns to the other factors. *See PGBA, LLC*, 389 F.3d at 1219.

**Irreparable Harm**. This Court has "repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract[.]" *See CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 494 (2013) (collecting cases). Anders clearly meets this standard because its proposal was irrationally stripped of its technical acceptability designation, preventing Anders from competing for the contract. *See AshBritt, Inc.*, 87 Fed. Cl. at 378–79 (reasoning "a lost opportunity to compete on a level playing field has been found sufficient to constitute irreparable harm"); *CW Gov't Travel, Inc.*, 110 Fed. Cl. at 495 (same).

**Plaintiff's Hardship, the Public Interest, and Government Inconvenience**. The balance of the hardships—and crucially the public interest—favors Anders, not defendant, because plaintiff was "originally determined to be the lowest priced, technically acceptable

bidder." *See* Oral Arg. at 11:10–11. Defendant does not contest the reasonableness of Anders' pricing. *Compare* Pl.'s Reply at 21–22 (pointing out that defendant "deflect[s] by arguing that even if Anders' pricing was reasonable, award to Anders was precluded due to the alleged technical unacceptability of the proposal."), *with* Def.'s Motion at 28–29. Nor could defendant contest the pricing's reasonability, for, as plaintiff mentions, the government has "paid [Anders] . . . similar prices [listed in the proposal at issue] . . . multiple times." *See* Oral Arg. at 11:12–13. As USACE concedes Anders' proposal is fairly priced, it is difficult—perhaps unreasonable—to determine a governmental inconvenience, let alone harm, exists here. *See GEO Grp., Inc.*, 100 Fed. Cl. at 229.

Seemingly, this fact explains why defendant insists—without proof—that Anders has inflicted delay, "tremendous strain[,] and burden on USACE contracting personnel and granting an injunction would only prolong this" situation. *See* Def.'s CMJAR at 32. But "only in an exceptional case would [such delay] alone warrant a denial of injunctive relief," a fact this Court has often stressed to defendant. *See Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715–16 (2006). Unsurprisingly, this case is not an exceptional matter when "particularly it appears that some of the problems encountered here are, at least in part, of defendant's own making." *Id.* at 716. This quality is further evident when "the contracting officer's initial determination that plaintiff's proposal constituted the best value to the government[.]" *See Bilfinger Berger AG Sede Secondaria Italiana v. United States*, 94 Fed. Cl. 389, 393 (2010). Accordingly, the public interest is served here by enjoining defendant's arbitrary actions. *See id.*

On balance, the factors favor injunction. *See Progressive Indus., Inc.*, 129 Fed. Cl. at 486 (" . . . the public's interest in ensuring the integrity and fairness of the procurement process outweighs the public's interest in permitting the [the agency] to conduct its source selection with prejudicial errors and evidence of unequal treatment of the offerors."). Accordingly, plaintiff's requested permeant injunction is granted; USACE is to award the contract to Anders.

### B. Defendant's Motion to Dismiss on Plaintiff's Alternative Claim is Granted Because this Court Lacks Jurisdiction under the Declaratory Judgment Act.

While Anders succeeds on the above grounds, the Court dismisses its alternative Declaratory Judgment Act claim—declaring that Anders' divers be compensated by USACE when traveling to and from USACE's site—for violating subject-matter jurisdiction requirements under Rule 12(b)(1) of the Rules of the Court of Federal Claims.

Jurisdictionally proper subject matter, complying with Rule 12(b)(1), originates from an expressed waiver of sovereign immunity, *see Mitchell*, 445 U.S. at 538; *King*, 395 U.S. at 5, which are "found[ in] either . . . the Constitution, or any Act of Congress, or any regulation of an executive department, or . . . any express or implied contract with the United States, or [in] liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Waiver thus equals judiciable rights; there is no exception. *See Mitchell*, 445 U.S. at 538 (in "absence of clear congressional consent . . . there is no jurisdiction in the Court of [Federal] Claims.") (internal quotation marks omitted); *King*, 395 U.S. at 5 (holding same).

Congress's waiver does not cover Declaratory Judgment Act claims. *See King*, 395 U.S. at 5 ("There is not a single indication in the Declaratory Judgment Act or its history that Congress, in passing that Act, intended to give the Court of [Federal] Claims an expanded jurisdiction[.]"). Indeed, this Court has applied this principle to a virtually identical request as Anders'. *See e.g.*, *Medrano*, 159 Fed. Cl. at 551 ("Defendant is correct: This Court lacks authority to issue declaratory judgments [clarifying that a failure to pay for alleged pre- and -post shift activates is unlawful] under the Declaratory Judgment Act, . . . so any claims or requests for relief Plaintiffs seek under that statute must be dismissed for lack of jurisdiction under RCFC 12(b)(1).") (citation omitted).[3]

Dismissal of Anders' Declaratory Judgment Act claim is therefore mandatory. *See id.*; *King*, 395 U.S. at 5. Accordingly, Defendant's Partial Motion to Dismiss is granted.

## IV. Conclusion

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is hereby **GRANTED IN PART AND DENIED IN PART**. Defendant's CROSS-MOTION for Judgment on the Administrative Record is hereby **DENIED**. Defendant's Partial Motion to Dismiss is **GRANTED**, for this Court lacks jurisdiction under the Declaratory Judgment Act.

**COSTS SHALL** be awarded to plaintiff.

Plaintiff **SHALL** also submit a draft injunction order consistent with this opinion by or before **10 DAYS** of this order. Defendant **MAY** file any opposition to the injunction's wording by or before **10 DAYS** after plaintiff submits its draft injunction. No opposition to granting the injunction will be considered.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*
Loren A. Smith,
Senior Judge

---

[3] Despite this precedent, Anders insists the Tucker Act generally "allow[s this Court to] provide any relief as required, including declaratory relief[.]" *See* Oral Arg. at 6:7–8. The Tucker Act's mandate, as defendant correctly indicates, is not flexible. *See* Def.'s CMJAR at 14. If the claim rests upon a statute like the Declaratory Judgment Act, without an "express[ed]" waiver, the Court cannot impose its jurisdiction. *See King*, 395 U.S. at 5. Nor does the Tucker Act create affirmative claims itself; it is only a jurisdictional statute. *See Mitchell*, 445 U.S. at 538